SAVOY OIL & GAS, INC v PRESTON OIL COMPANY

Docket No. 156310. Submitted December 20, 1994, at Lansing. Decided March 14, 1995; approved for publication May 9, 1995, at 9:00 A.M. Leave to appeal sought.

Savoy Oil & Gas, Inc., filed a complaint in the Public Service Commission against Preston Oil Company, alleging that Preston had violated 1929 PA 9, MCL 483.101 *et seq.*; MSA 22.1311 *et seq.*, by constructing a natural gas pipe line without first obtaining from the commission a certificate of public convenience and necessity. The commission ordered Preston to stop using the pipe line and to apply for a certificate, or remove the pipe line and restore the pipe line area to its original condition. Preston appealed.

The Court of Appeals *held:*

The commission's regulatory authority under 1929 PA 9 extends to three types of entities: those that transport natural gas through pipe lines for hire, compensation, or otherwise; those that are engaged in the business of piping or transporting natural gas; and those that are engaged in the business of buying and selling or transporting natural gas. Preston does not fit any of these categories because its pipe line transports natural gas from one well owned by Preston and others to one customer, and the transported gas is owned by Preston or the other owners of the well who, under the terms of a joint operating agreement covering production from the well, are credited for their transported gas with increases in their share of gas in storage.

Reversed.

GAS AND OIL — NATURAL GAS PIPE LINES — PUBLIC SERVICE COMMISSION.

Regulatory authority granted to the Public Service Commission under 1929 PA 9 extends over those that transport natural gas through pipe lines for hire, compensation, or otherwise, those that are engaged in the business of piping or transporting

REFERENCES

Am Jur 2d, Pipelines §§ 7-19.

See ALR Index under Pipes and Pipelines.

natural gas, and those that are engaged in the business of buying and selling or transporting natural gas (MCL 438.101; MSA 22.1311).

*Josh Fields & Associates* (by *Joseph H. Fields*), for Savoy Oil & Gas, Inc.

*Lynch, Gallagher, Lynch, Shirley & Martineau* (by *John J. Lynch*), for Preston Oil Company.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Don L. Keskey* and *Patricia S. Barone*, Assistant Attorneys General, for the Public Service Commission.

Before: FITZGERALD, P.J., and GRIBBS and M. J. TALBOT,* JJ.

PER CURIAM. Preston Oil Company appeals as of right the August 25, 1992, opinion and order of the Michigan Public Service Commission (PSC) wherein the PSC found that Preston had violated the natural gas act, 1929 PA 9 (Act 9), MCL 483.101 *et seq.*; MSA 22.1311 *et seq.*, by constructing a gas pipe line without first obtaining a certificate of public convenience and necessity. We reverse.

Preston is one of several working-interest owners of the Eplett 1-3 gas well in Shelby Township, Macomb County, Michigan, and holds a seventy-three percent interest in the well. Appellee Savoy Oil & Gas, Inc., holds most of the remaining interest. According to a joint operating agreement (JOA) executed by the various interest owners, all oil and gas produced from the well is owned by the various owners according to their proportionate shares of interest.

The JOA provides for each owner to take "in kind" or separately dispose of its proportionate

* Circuit judge, sitting on the Court of Appeals by assignment.

share of all oil and gas produced and incorporates a balancing agreement in the event one or more owners' separate disposition of the gas causes split-stream deliveries to separate pipe lines or deliveries that on a day-to-day basis are not exactly equal to an owner's respective proportionate share of total gas sales. The balancing agreement essentially provides that whenever one or more of the owners are unable to take their proportionate share of the gas produced because of the lack of a market, the remaining owners are entitled to produce, take, and deliver the maximum gas production from the well as their own, while the nonproducing or nontaking owners are given a credit in the gas remaining in storage according to their share of the net gas produced and taken at that time. The balancing agreement further provides for a final cash balancing in the event an imbalance remains in any owner's account when the gas is ultimately depleted.

Although a twenty-six-inch gas transmission line owned by Consumers Power Company is located a short distance north of the Eplett 1-3 well, Consumers has refused to purchase or transport unblended Eplett gas without severe restrictions, because of the high nitrogen content of the gas. Preston arranged to have Eplett gas blended with gas from the Johnson 1-9 well owned by West Bay Exploration Company by means of an interconnect on the Johnson 1-9 gas line into Consumers' pipe line distribution system, and proceeded to construct a three-inch gas pipe line between the Eplett 1-3 well and the Johnson 1-9 transmission line for that purpose. Although Savoy and the other parties to the JOA had expressed willingness to pay some proportionate share of Preston's pipe line and transmission costs in order to have their share of the Eplett gas transported through Pre-

ston's pipe line, the parties were unable to reach any agreement, and Preston has refused to transport any of the other owners' gas through its pipe line.

Savoy instituted these proceedings in the PSC by filing an application, treated by the PSC as a formal complaint, alleging that Preston's pipe line is subject to the requirements of Act 9 and that Preston has violated Act 9 by constructing its pipe line without first obtaining a certificate of public convenience and necessity. Pending a hearing regarding the matter, the PSC reduced the allowable production of the Eplett 1-3 well to 500 million cubic feet a month. By that time, Preston had already negotiated an end-user contract with Chrysler Corporation for the purchase of blended Eplett gas, but the new restrictions on monthly production imposed by the PSC made deliveries under that contract proposal infeasible.

Ultimately, the PSC held that Preston's pipe line is subject to regulation under Act 9, finding that Preston is carrying the gas of other working-interest owners in the Eplett well for hire, compensation, or otherwise and is, in fact, exercising or claiming the right to engage in the business of piping or transporting natural gas. The PSC further reasoned that requiring Preston to obtain a certificate of public convenience and necessity for the pipe line is consistent with the purposes of Act 9 in that it serves to avoid unnecessary waste of resources and related environmental and safety problems. Accordingly, the PSC ordered Preston to immediately cease and desist from using its pipe line and to apply for a certificate of public convenience and necessity within thirty days or remove its pipe line and restore the pipe line area to its original condition. Preston has since applied for a certificate of public convenience and necessity as

ordered, but Preston's application is apparently still under review by the PSC at this time.

We note that, in general, a PSC order requiring a party to apply for a certificate of public convenience and necessity is interlocutory and, therefore, may not be subject to appellate review under MCL 462.26(1); MSA 22.45(1). *Marshall v Consumers Power Co (On Remand),* 206 Mich App 666, 674-675; 523 NW2d 483 (1994). However, none of the parties have disputed this Court's jurisdiction to review the PSC's decision in this case, and we find it unnecessary to determine whether an appeal is in fact available. Even without the remedy of direct appellate review, the PSC's disputed assertion of jurisdiction over Preston's pipe line is subject to collateral attack. See, e.g., *Michigan Consolidated Gas Co v Sohio Petroleum Co,* 321 Mich 102; 32 NW2d 353 (1948); *Nat'l Steel Corp v Public Service Comm,* 204 Mich App 630; 516 NW2d 139 (1994).

We find that Preston's pipe line is not subject to regulation by the PSC under Act 9. We begin by noting that the PSC has no common-law powers, but only authority expressly conferred on it by specific statutory enactments. *Union Carbide Corp v Public Service Comm,* 431 Mich 135, 146; 428 NW2d 322 (1988); *Nat'l Steel Corp, supra* at 632. The PSC's regulatory authority under Act 9 extends to three types of entities: (1) those transporting natural gas through pipe lines for hire, compensation, or otherwise; (2) those engaged in the business of piping or transporting natural gas; and (3) those engaged in the business of buying and selling or transporting natural gas. MCL 483.101; MSA 22.1311.

In *Sohio Petroleum, supra,* the Michigan Supreme Court held that Sohio did not fall within any of these three categories when it used its own

pipe line to transport gas from its own gas wells for sale to a single customer. Because Sohio's pipe line was only used to transport its own property, Sohio was neither transporting "for hire, compensation or otherwise" nor engaged in "the business of" piping or transporting. The Supreme Court analogized the situation to that of a farmer transporting the farmer's own produce to market for sale. While such a farmer may be engaged in the business of selling produce, transporting one's own goods does not constitute engaging in the transportation business. *Id.* at 108-109. Furthermore, because Sohio did not buy the gas it transported and sold, it was not engaged in the business of "buying and selling or transporting natural gas." *Id.* at 109. Moreover, the Supreme Court concluded that the transportation of one's own gas for sale to a single contract purchaser cannot be demonstrated to be a matter of public convenience and necessity. See also *Nat'l Steel Corp, supra* at 633-634.

Here, Preston does not propose to use its pipe line to transport anyone else's gas but its own, nor has it proposed to sell the gas to more than a single contract customer. Indeed, it was apparently Preston's refusal to transport any of the gas belonging to the other working-interest owners that led to the institution of these proceedings in the PSC.

We find no support for the PSC's conclusion that Preston is carrying the gas of the other working-interest owners in its pipe line, much less that it is doing so "for hire, compensation or otherwise" or as a business separate and apart from merely marketing its own gas in accordance with the terms of the JOA. While it is true that the JOA generally provides that all oil and gas produced from the well is owned by all of the owners according to their proportionate share of interest, the

agreement also specifically provides for the owners to take their shares of the gas produced in kind, not only to market their gas separately, but also to make separate deliveries of their respective shares of the gas through separate pipe lines. Such separate deliveries would be virtually impossible if the parties had intended each owner to hold an undivided interest in each molecule of gas produced from the well. Nor do we find the construction of a pipe line for the exclusive use of one or more of the owners in any way inconsistent with the terms of the owners' agreement.

Even assuming, arguendo, that Preston's deliveries of gas will exceed, on a day-to-day basis, its proportionate share of total gas sales to be allocated to it, this does not necessarily mean that Preston will be transporting any of the gas of the other working-interest owners. Rather, the owners' balancing agreement provides for an adjustment in their respective ownership of the remaining gas reserves, with cash balancing in the event of depletion, when such disproportionate taking occurs.

If all of the working-interest owners were able to transport their own proportionate shares of the gas produced through their own separate pipe lines, each to a single contract customer, there would be no basis for the PSC to exercise jurisdiction under Act 9, because each owner, like Sohio in the *Sohio Petroleum* case, would be transporting only its own gas to a single customer, and thus no matter of public convenience and necessity within the commission's jurisdiction would be presented. The mere fact that this might result in wasteful and environmentally unwise duplication of effort would not alone support the PSC's exercise of jurisdiction. Indeed, similar concerns were present in the *Sohio Petroleum* case. *Id.* at 105. It follows that the environmental and conservation

concerns expressed by the PSC in this case are likewise insufficient to support the PSC's regulation of Preston's pipe line under Act 9.

Our disposition of this issue renders discussion of Preston's remaining issues unnecessary.

Reversed.